IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 06-05037-02-CR-SW-FJG |
| RAMON HERNANDEZ-PACHECO, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Defendant filed a Motion to Suppress Evidence, in which he asserts that evidence seized as a result of a search of his residence should be suppressed. The United States filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on April 11, 2007. Defendant was present with counsel, Robert Lewis and C.R. Rhoades, and the United States was represented by Robyn McKee, Assistant United States Attorney.

The government's first witness was Officer Larry King of the Southwest Missouri Drug Task Force. On July 27, 2006, he was conducting an investigation of and sought a search warrant for 527 Logan, Monett, Barry County, Missouri. In his affidavit, he stated that he received information from an anonymous source regarding the fact that methamphetamine was at that residence. The source of the information was ultimately identified as Jose Serrano. Serrano was arrested that day for possession of methamphetamine. They knew about Serrano's connection with methamphetamine through a previous investigation because they had an individual in custody who was obtaining methamphetamine from Serrano. That individual decided to cooperate. He provided Serrano's

1

name, contacted him by phone, told the officers what he would be driving, and that he would have methamphetamine with him. The officers found Serrano on the same day as the search warrant was obtained and executed, and made contact with him. When they did so, they conducted a consensual search of his vehicle, where they found one ounce of crystal methamphetamine and about $6,000. He had his sister with him, and a search of her belongings led to finding more cash. The methamphetamine was packaged in a bag with black electrical tape around it, and was located on the front passenger floorboard. Serrano agreed to cooperate, and told the officers that he had gotten the drugs from 527 Logan in Monett. He stated that he got the methamphetamine from defendant, whom he called "Palone." [Tr. 9]. He told Officer King that the methamphetamine would be located in the garage, under the rafters. Serrano said he'd last seen the drugs two days previously, wrapped in black electrical tape, which was the manner in which his drugs were packaged. To locate 527 Logan, Serrano rode with Officer King and pointed out the residence, as well as providing directions. He also pointed out the location where the drugs were stored. Officer King then contacted Immigration and Customs Enforcement ["ICE"], and spoke to Special Agent Greg Paris regarding defendant. Agent Paris had information from another source about an individual named Palone, who lived in the area and was distributing methamphetamine. This fact was included in the affidavit. When Officer King applied for the search warrant, he submitted the case to the prosecutor in Barry County. He prepared the affidavit, which the prosecutor approved in his presence. They presented it to the judge, who reviewed it in the officer's presence. The judge gave him no reason to believe that there was a concern about the affidavit, nor did the prosecutor. The officer has previously applied for 50-100 search warrants. He believed there was sufficient probable cause for the search warrant, which was verified by the prosecutor's approval and the judge's signing of the

2

search warrant. There was nothing to give him any concern regarding probable cause.

Officer King participated in the execution of the search warrant. Law enforcement officers found methamphetamine wrapped in electrical tape, baggies, scales, and a large amount of currency in the garage. Defendant was placed under arrest, read his rights and then made statements.

On cross examination, Officer King testified regarding training about search warrants, and agreed that his training had come from on-the-job experience. Regarding using an unnamed source of information, he agreed that it is important to corroborate that information. Also, if using an unnamed source, it's important to let the judge know if the individual has been reliable in the past. There's nothing in the affidavit to indicate that this individual had been reliable in the past. Officer King agreed that he did not include the name of the source, and that the source had never proven his reliability. He stated that the fact that Serrano rode with him to the residence was not included in the affidavit, nor was the fact that Serrano was arrested for possession of methamphetamine, although it was in his report. The officer testified that he independently corroborated that such an address existed by driving by and confirming this, and spoke to Agent Paris in reference to "Palone." Regarding the other individual who provided information about Palone, the officer does not know the reliability of that individual, whose identity he did not know. Officer King talked to Agent Paris in person about this other individual, who stated that Palone traveled to Texas approximately twice a month and obtained multiple pounds of methamphetamine. This information was included in the affidavit. He admitted that there was nothing in the affidavit that stated that Serrano knew what methamphetamine was. He believed that, due to the specificity of what Serrano said, it was his opinion that he was being truthful. Officer King stated this opinion in the affidavit. He believed and still believes that his one paragraph opinion provided sufficient probable cause, and noted that

3

the judge agreed with him.

On redirect, Officer King stated that he believed that he established the reliability of the source by corroborating the information that the source gave. He knew that Serrano knew what methamphetamine was because he possessed it and admitted to that fact.

On re-cross examination, the officer testified that if he had provided more specific information, it would have been obvious as to who the source was, which would have defeated the purpose of having an anonymous source. The source wanted to remain anonymous, and that is the reason these details are not in there.

Defendant asserts that the affidavit in this case was inadequate to establish probable cause for the issuance of the warrant. He also contends that Leon should not apply, because it is based on an objective standard, and is not based on subjective belief of the officer.

The law is clear that a warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Gates, 462 U.S. at 238. Affidavits should be read in a "common-sense and realistic fashion" and judges must make a practical decision based on the totality of the circumstances. United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (citation omitted). In determining for suppression purposes the validity of a warrant, the court must determine whether there was a "substantial basis" for the probable cause determination. Gates, 462 U.S. at 238. Probable cause may be based on hearsay from a reliable source, and anonymous information that can be independently corroborated may form a probable cause basis. Id. at 244-45. "The requisite

4

nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Etheridge, 165 F.3d 655, 657 (8th Cir. 1999).

In this case, the Court finds, under the totality of the circumstances, that there was probable cause to support the issuance of the search warrant. The affidavit in support of the search warrant indicates that an anonymous source stated that defendant, also known as Palone, was in possession of approximately 3.5 pounds of methamphetamine, in one-pound packages wrapped in electrical tape. According to the source, he watched defendant remove the packages from a hidden compartment in the garage, which was on the west side close to the ceiling behind a piece of wood. The source also provided information that defendant obtains between five to eight pounds of methamphetamine on a regular basis. Additionally, the affidavit indicates that Officer King believed that such detailed and specific information could only come from first-hand knowledge, and he therefore "believes the information given by this source is thought to be true and correct." [Affidavit at 1]. Further, the affidavit states that Special Agent Paris advised the affiant that he had interviewed an individual within the past month who knows a subject nicknamed Palone, who lives in Lawrence/Barry County and travels to Texas approximately every 15 days to obtain multiple pounds of methamphetamine. The affidavit also contained directions to reach defendant's residence and a description of it.

Officer King testified at the hearing before the undersigned that it was his intention to keep the name of his source confidential, at the request of that individual. The affidavit did contain information, however, regarding the corroboration of the information provided by Serrano, which came from Agent Paris, who provided essentially the same information implicating someone by the name of Palone who was involved in methamphetamine trafficking. Additionally, Officer King

5

testified that Serrano provided directions and accompanied the officer to where defendant lived, and pointed out where the methamphetamine was being hidden in the garage. Other details, such as the way the methamphetamine was packaged, and the statement that "Palone" went to Texas approximately twice a month to obtain large amounts of methamphetamine, were also consistent. The Court finds that there is substantial specificity and corroboration in the affidavit to support the conclusion that the information from the anonymous source was based on first-hand knowledge and was reliable. Finally, the stop and arrest of Serrano, his being in possession of an ounce of methamphetamine and a substantial amount of cash, and his cooperation with law enforcement all occurred on the same day the search warrant was obtained and executed. These factors support the conclusion that there was probable cause that methamphetamine would be found at defendant's residence. Accordingly, the Court finds there was probable cause to support the issuance of the search warrant in this case.

Even assuming, however, that the warrant in this case was not based on probable cause and found to be defective, the Court finds that the good faith exception enunciated in United States v. Leon, 468 U.S. 897, 922-23 (1984), would apply. It is clear that Officer King relied in good faith on what he believed to be a valid search warrant, which was reviewed and signed by a neutral magistrate. There is nothing to suggest that the affidavit was so lacking in indicia of probable cause that the Leon good faith exception should not apply. When making a good faith assessment, the Court must examine the totality of the circumstances, including what the officer knew but did not include in his affidavit. United States v. Chambers, 987 F.2d 1331, 1335 (8th Cir. 1993). Having reviewed the record as a whole, with the benefit of Officer King's testimony at the hearing, including the fact that Serrano led him to defendant's residence and pointed out where he had seen the methamphetamine hidden, the Court finds that the officer reasonably relied on the validity of the

warrant. It was objectively reasonable for the officer to have believed that probable cause existed in this case. Accordingly, it will be recommended that the motion to suppress should be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Evidence be denied.

    /s/ James C. England
JAMES C. ENGLAND, Chief
United States Magistrate Judge

Date: 5/2/07